**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCHILS AMERICA ACQUISITION CORPORATION, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-0588 |
| v. | (JUDGE CAPUTO) |
| SCHILS BV, ET AL., | |
| Defendants. | |

### MEMORANDUM

Defendants Schils BV, Schils Overseas BV, Aabel Dairy Products BV, Armand Mennen and Hubert J.M.F. Gillesen ("Netherlands Defendants") move to dismiss this matter for lack of personal jurisdiction and failure to plead the fraud claims with particularity. (Doc. 20.) As to jurisdiction, they contend: 1) the individual Defendants lack the requisite contacts with Pennsylvania, and 2) the corporate Defendants do not have continuous or systematic contacts with Pennsylvania. The Defendants contend that Plaintiff has not alleged sufficient contact to support *in personam* jurisdiction.

Because there are sufficient contacts with Pennsylvania and business was purposefully conducted in Pennsylvania, I find there is jurisdiction of the corporate defendants Schils Bv, Schils Overseas BV, Armand Mennen and Herbert J.M.F. Gillesen. I find those elements lacking as to Aabel Dairy Products and therefore do not find the existence of jurisdiction. Further, because I find that fraud has been pled with sufficient particularity, I will deny Defendants' motion to dismiss the fraud claims.

## DISCUSSION

Under Rule 4(e) of the Federal Rules of Civil Procedure, a district court, in a diversity case, must apply "the law of the forum state in determining whether personal jurisdiction is proper". *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).[1]  In this connection, the Pennsylvania Long Arm Statute provides, in pertinent part:

> (b) Exercise of full constitutional power over non-residents. - In addition to the provision of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 530 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa. C.S.A. §5322(b).  "In Pennsylvania, whose jurisdictional statute expressly incorporates the federal due process standard, the inquiry is principally one unto the constitutional propriety of the exercise of jurisdiction."  *Max Daetwyler Corp.,* 762 F.2d at 293.  Hence, there has to be constitutionally sufficient minimum contact by the Defendants to Pennsylvania in order to find jurisdiction.  *Vetrotex,* 75 F.3d at 150.  This is a factual question, and depends on the assessment of the "quality and nature of defendant's activity."  *Max Daetwyler Corp.,* 762 F.2d at 298 (citations omitted).

---

[1] Plaintiff's contention that a national contact theory is appropriate is in error.  *See Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 300 (3d Cir. 1985)("In the absence of a governing federal statute providing for nationwide service of process, in personam jurisdiction may not rest upon an alien defendant's aggregated contacts with the United States").

Courts could exercise personal jurisdiction over non-resident defendants under the minimum contacts test even if there was one single act if it supports specific in personam jurisdiction. Courts have found jurisdiction over a claim arising out of a single act because of the quality and nature of the act. *McGee v. Int'l Ins. Co.,* 355 U.S. 220 (1957). An ongoing business relationship was found sufficient to find jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985). "Specific jurisdiction is appropriate only if the cause of action is related to or arises out of the defendant's forum-related activities, so that it should reasonably expect to be haled into court. *Action Mfg. Co., Inc. v. Simon Wrecking Co.,* 375 F. Supp. 2d 411, 419 (E.D. Pa. 2005) (citations omitted). "The defendant must have 'purposefully directed his activities at residents of the forum' and the litigation must have resulted from alleged injuries that 'arise out of or relate[ ] to those activities.'" *Id.* (citations omitted).

If sufficient minimum contacts are shown, the Court must also ask whether exercising jurisdiction will comport with "traditional notions of fair play and substantial justice." *Vertrotex,* 75 F.3d at 150-51 (citations omitted).

**1.    Personal Jurisdiction**

    **a.    Minimum Contact: Netherlands Corporate Defendants**

        **i. Schils BV and Schils Overseas BV**

Three Pennsylvania corporations, Schils America, Inc., Susquehanna Industries, Inc., and U.S.A. Livestock Enterprises, Inc. are subsidiaries of Schils BV. (Amend. Compl. ¶ 7.) Schils BV played an integral part in Schils America, Inc. and Susquehanna Industries, Inc.'s

3

sale and financing of business and real estate assets to Plaintiff. *(Id.* at ¶¶ 9, 16.) Schils BV negotiated and conducted business with Plaintiff in Pennsylvania. While "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident, [t]he requisite contact, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank v. Farino,* 960 F.2D 1217, 1223 (3d Cir. 1992) (citing *Burger King, Corp. v. Rudzewicz,* 471 U.S. 462, 479 (1985)). Additionally, it was the parent corporation of the Pennsylvania corporations with which Plaintiff transacted. While there is no definite test, "the Third Circuit has set forth some factors which should be considered in determining whether a court has jurisdiction, such as whether the subsidiary corporation has played a part in the transactions at issue. . . ." *Action Mfg. Co., Inc.,* 375 F. Supp. 2d at 420-21.

It appears that Schils BV and Schils Overseas BV acted jointly in much of the negotiations and sales of the subsidiaries, Schils America and Susquehanna Industries, business assets. According to the Declaration of Art Henderlong (Doc. 32), at some point during 2001, Schils BV elected to sell the assets of Schils America and Susquehanna Industries and a meeting was held to sell these assets to Plaintiff. (Decl. of Art Henderlong, ¶¶ 12-14.) According to the meeting minutes, Schils Overseas BV was the sole shareholder of Schils America and Susquehanna Industries (*Id.* at ¶ 14.) According to Art Henderlong, he believes Schils BV assigned its ownership interest in Schils America and Susquehanna Industries to Schils Overseas BV prior to the meeting. (*Id.*) Representatives of Schils BV and Schils Overseas BV were present at the meeting. (*Id.*) At the meeting, Schils America

and Susquehanna Industries' assets were to be sold to Plaintiff via the company later known as Schils America Acquisition Corp. (*Id.*) Subsequently, Schils America and Susquehanna Industries were dissolved on October 31, 2001 under the consent of Schils Overseas BV. (*Id.* at Ex. B, C) I therefore find Schils BV and Schils Overseas BV, are subject to this Court's jurisdiction.

### ii.     Aabel Dairy Products

It is less clear what Aabel Dairy Products BV's ("Aabel Dairy") role in the sale transaction was, if any.   Aabel Dairy is a Netherlands Corporation (Mot. to Dismiss Compl., ¶ 5) and is a wholly owned subsidiary of BV (Decl. of Henderlong, ¶ 47).  Aabel Dairy's relationship to Plaintiff appears to be limited to its role in invoicing deliveries from Schils America Inc. to Canadian Veal in Canada. (Decl. of Mennen, Ex. A).  In assessing minimum contact, the court must examine both the extent to which the alien corporation availed itself to the privileges of American law and the extent to which it could reasonably anticipate being involved in litigation in the United States.  *Max Daetwyler Corp.*, 762 F.2d at 295.  In the instant case, Aabel Dairy is limited in its relationship with Schils America and even more with the United States.  Furthermore, not only did Aabel Dairy not anticipate litigation in the United States, it expressly waived liability in the event of non-payment by the third party buyer, Canadian Veal. (Decl. of Mennen, ¶ 8 and Ex. A.)

I therefore find that Aabel Dairy Products BV is not subject to this Court's jurisdiction.

### b.     Minimum Contact:  Netherlands Corporate Officer Defendants

The minimum contact test applies to individuals as well as corporate defendants. *Kulko v. Superior Court,* 436 U.S. 84, 92 (1978).  Armand Mennen and Hubert J.M.F.

Gillesen are both officers of the Netherlands Corporate Defendants and allegedly acted as key players in the negotiation and sale of the business assets to Plaintiff. To determine whether the Court has jurisdiction over Mennen and Gillesen, the Court has to consider the following:

> In general, a court does not have personal jurisdiction over an individual defendant whose only contact with the forum state were taken in his or her corporate capacity. This general rule, however, does not apply when the corporate officer is charged with (1) committing a tort in his corporate capacity or (2) violating a statutory scheme that provides for personal, as well as corporate, liability for corporate actions. Likewise, a court may disregard the fiduciary shield if the defendant 'had a major role in the corporate structure, the quality of his contact with the state were significant and his participation in the tortious conduct was extensive.

*United Prod. Corp. v. Admiral Tool & Mfg.,* 122 F. Supp. 2d 560. 562 (E.D. Pa. 2000).

Mennen and Gillesen, allegedly, intentionally defrauded Plaintiff into securing financing to close the sale pursuant to the First Note. (Decl. of Henderlong, ¶ 27.) Mennen had held meetings with Plaintiff in Pennsylvania regarding this matter under the direction of Gillesen. *(Id.* at ¶¶ 27, 29, 30.) Plaintiff also had telephone conversations with Gillesen regarding the same matter. *(Id.* at ¶ 28.) Mennen and Plaintiff also communicated through e-mails. *(Id.* at ¶ 32.)

While it appears that Mennen did most of the leg work, the Court has jurisdiction over both, as Plaintiff relied on Mennen as the apparent agent of Gillesen. Apparent authority is determined by whether "a man of ordinary prudence, diligence and discretion would have a right to believe that the agent possessed the authority he purported to exercise." *Northeastern Power Co. v. Balke-Durr, Inc.,* 49 F. Supp. 2d 783, 789 (E.D. Pa. 1999)

(citations omitted). In determining this, the "proper focus is on the conduct of the alleged principal and not the agent." *Id.* (citations omitted). Additionally, to find the existence of an apparent agency relationship, it must be shown that there was reliance on the part of the plaintiff. *Id.* (citations omitted). All three of these factors are met in this case. When in April of 2003, Gillesen called Plaintiff in Pennsylvania, he advised Plaintiff that he will be sending Mennen to meet with Plaintiff to assist Plaintiff in securing financing. (Decl. of Henderlong, ¶ 28.) Plaintiff believed that Mennen was acting as Gillesen's "right hand man" (*Id.*) and allegedly relied on that belief throughout the transaction period.

### c. Fair Play

The Netherlands Defendants, all except Aabel Dairy Products, have purposefully conducted their business in Pennsylvania. In light of Plaintiff's alleged injury, I find the exercise of personal jurisdiction over the Netherlands Defendants to comport with traditional notions of fair play and substantial justice.

### 2. Fraud Claims

Defendants contend that the Sixth Count and the Eighth Count should be dismissed because Plaintiff did not plead fraud with sufficient particularity.

Rule 9(b) of the Federal Rules of Civil Procedure provides:

> In all averments of fraud or mistake,
> the circumstances constituting fraud
> or mistake shall be stated with
> particularity, malice, intent, knowledge,
> and other conditions of mind of a
> person may be averred generally.

Fed. R. Civ. P. 9(b).

The United States Court of Appeals for the Third Circuit holds that "Rule 9(b) requires

7

a plaintiff to plead (1) a specific false representation [or omission] of a material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and, (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992). The plaintiff should support allegations of fraud with the essential factual background that would be in "the first paragraph of any newspaper story" namely "who, what, when, where and how." *In re Rockefeller Cent. Properties*, 311 F.3d 198, 217 (3d Cir. 2002) quoting from *In re Burlington*, 114 F.3d at 1422 (citing *DiLeo v. Ernst & Young*, 901 F.2d, 624, 627 (7th Cir. 1990).

Applying this law to the Sixth Count, the complaint is clear enough in its assertion of falsity. Paragraph 102 speaks in terms of an alternative "to the extent the representations of . . . the defendants concerning the assets of the Debtor were false when made." The Sixth Count speaks about accounts receivable which defendants, prior to the transaction, represented were valid accounts receivable. Subsequent to the transaction, and thus after the Plaintiff relied upon their validity, Defendants said they were not valid and/or subject to offsets. The complaint clearly states that Defendants (1) made a specific false representation - the accounts receivable were valid and enforceable; (2) the Defendants knew it was false; (3) the Plaintiff was ignorant of the falsity; (4) the Defendants' intention that the validity of the receivables should be relied upon; and (5) Plaintiff acted upon it to its damage.

The Eighth Count states a claim for fraudulent inducement. The Defendants made false representations of material facts. They represented that the receivables were good and would provide working capital; they represented that the professional fees and closing costs were to be paid by one of the Defendants; they represented that the Additional Cash Escrow

8

would be released for working capital; they represented that Schils BV would provide Debtor with 10% of Schils BV's export business in South America for 3 years; they represented that Schils BV would provide Debtor with technical support for 7 years; and they represented that the purchase price would be limited to the sums due on the First Note. The complaint contains allegations that all of the foregoing were false, that the representations were intentional and for the purpose of inducing Debtor to satisfy the First Note, which it did, to its damage. All of the requirements of Rule 9(b) are satisfied in the Eighth Count.

Therefore, the motion to dismiss the Sixth Count and the Eighth Count will be denied.

An appropriate Order follows.

| | |
|---|---|
| February 3, 2006<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCHILS AMERICA ACQUISITION CORPORATION, | |
| Plaintiff, | CIVIL ACTION NO. 3:05-CV-0588 |
| v. | (JUDGE CAPUTO) |
| SCHILS BV, ET AL., | |
| Defendants. | |

**ORDER**

**NOW**, this 3rd day of February, 2006, **IT IS HEREBY ORDERED** that Defendants Schils BV, Schils Overseas BV, Aabel Dairy Products BV, Armand Mennen and Hubert J.M.F. Gillesen motion to dismiss (Doc. 20) is granted in part and denied in part as follows:

1. The motion to dismiss for lack of jurisdiction is **denied** as to Defendants, Schils BV, Schils Overseas BV, Armand Mennen and Hubert J.M.F. Gillesen.

2. The motion to dismiss for lack of jurisdiction is **granted** as to Defendant, Aabel Dairy Products BV.

3. The motion to dismiss is **denied** as to the Sixth Count and the Eighth Count of Plaintiff's Amended Complaint.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge